## Commonwealth v. Fleming

*W. S. Sharpless*, district attorney, and *Howard R. Berninger*, assistant district attorney, for Commonwealth.

*J. Atlee Cryder* and *George O. Wagner*, for defendant.

KREISHER, P. J., March 6, 1951.—Defendant was apprehended on December 9, 1949, charged with operating her new Chrysler automobile on Route 11, be-

tween Bloomsburg and Berwick, in South Center Township, this county, at an excessive rate of speed, as provided in The Vehicle Code.

Following a hearing before a justice of the peace, at which time defendant was adjudged guilty, upon special allowance this court allowed an appeal, and on October 30, 1950, a hearing de novo was held in open court.

During the hearing a certificate of speedometer accuracy on the automobile driven by the State police officer was offered and received in evidence over objection of defendant's counsel. Also at this hearing the prosecuting State police officer and his companion both testified that they followed defendant in their State police car, and for more than one quarter of a mile clocked her at 65 miles per hour. Defendant and her sister took the stand and testified in their own behalf, and stated that, in their opinion, they were not exceeding the 50-mile an hour speed limit, except in executing passes of automobiles going in the same direction, at which time they probably did drive 55 miles per hour. The officers further testified that defendant was clocked from the Eshleman war surplus store eastward a distance of approximately one-half mile at the speed of 74 miles per hour.

After hearing counsel for defendant requested that the testimony be transcribed, and that they be permitted to file a brief with the court on the question of the admissibility of the certificate of the speedometer accuracy which the court admitted in evidence.

The Act of May 1, 1929, P. L. 905, sec. 1002, as amended by the Act of June 27, 1939, P. L. 1135, sec. 23, 75 PS §501, provides, inter alia, as follows:

". . . Under all other conditions, the rate of speed shall be timed, for a distance of not less than one quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within

a period of thirty (30) days prior to the alleged violation. An official certificate from an official speedometer testing station, showing such test was made, that the speedometer was adjusted for accuracy, the date thereof, and the degree of accuracy of such speedometer after adjustment, shall be competent and prima facie evidence of the fact that such certificate was issued by an official speedometer testing station appointed by the secretary, and of the accuracy of the speedometer, in every proceeding where an information is brought charging a violation of this section.

"(2) The secretary shall have the authority to appoint official stations for testing speedometers, and may prescribe regulations as to the manner in which such tests shall be made, and shall issue to such stations official inspection certificate forms."

The Secretary of Revenue has designated the Housenick Motor Company of Bloomsburg, Pa., as an official station, and the certificate here in question was issued by the Housenick Motor Company on a form furnished it by the Secretary of Revenue of the Commonwealth, and it was signed by Norman Applegate, the person making the test of the particular automobile used to clock defendant in this case. The certificate shows on its face that this particular State police vehicle was examined and tested on December 1, 1949, which was only nine days prior to the alleged offense, and therefore within the 30-day requirement of the act of assembly. Attached to the certificate was another paper setting forth the results of the speedometer test, showing that the speedometer of the vehicle and the testing speedometer were exactly the same at 10, 20, 30 and 40 miles per hour. At 50 miles per hour on the State police vehicle, the test speedometer showed 51, at 60 miles per hour on the State police vehicle, the test speedometer showed 61, at 70 miles per hour, the test speedometer showed 72, at 80 miles per hour the test

speedometer showed 82 and at 90 miles per hour the test speedometer showed 93. There is no question about the fact that this certificate relates to the actual vehicle used by the State police in clocking defendant. However, counsel for defendant contends that the certificate and the accompanying results of the test are inadmissible because the certificate is incomplete, in that it fails to show that the speedometer was adjusted for accuracy, as the certificate as furnished by the Department to official inspection stations has used both words, one above the other, of "found" and "made" accurate, and indicating that the person making the test should strike out the word that does not apply, and in this particular certificate neither word is stricken therefrom, so counsel contends since, from an examination of the certificate, it is impossible to determine whether the speedometer of the State police vehicle was found accurate or made accurate. This argument seems to this court to be excessively technical, and we do not believe that the legislature, in enacting the above-quoted act of assembly, intended that such technical reasoning should be applied so as to prevent a prosecution of this nature.

Counsel contends that the record attached to the certificate showing the results of the test is inadmissible, because the certificate must be admitted as an entity or a unit, and cannot be composed of different sheets of paper. It also appears that a small portion of the certificate was torn from the lower left-hand corner. However, it does not appear that the removal of the portion of the certificate which is missing contained any pertinent information. As a matter of fact, it indicates that that portion which is missing was a blank, and it is evident that this portion was torn therefrom because of excessive use of this certificate in other proceedings. We here point out that this violation occurred in December of 1949, and this matter was not

brought before the court until October 30, 1950, so that it is not difficult to understand how a corner of this certificate might have been torn from use.

We further note that in order to comply with the objection of defendant's counsel to the admissibility of this certificate, the Commonwealth called the mechanic who made the test, so that it was not necessary in this proceeding to rely solely upon the hearsay evidence of a certificate, which has been expressly made admissible by the above-quoted act of assembly, but in addition thereto Norman A. Applegate, who signed the certificate, testified under oath that he made the examination and test of this particular vehicle at the time set forth in the certificate, and that he tested the speedometer for accuracy, and found it to be as stated on the sheet of paper attached to the certificate. Counsel for defendant contends that since the certificate fails to show the degree of accuracy of the speedometer on the State police vehicle, that the same is inadmissible. It is difficult for the court to understand counsel's contention in this regard, when the results of the test are set forth in detail, and show the exact result of the test made.

The above-quoted act of assembly was enacted to carry out an important phase of the police power to promote safety upon the highways, and we are well familiar with the decisions of the court prior to 1939, wherein certificates of the nature herein offered in evidence were inadmissible, but we believe that in the exercise of the police power, the legislature has the right, as they did in this particular case, to make by fiat this evidence admissible and competent, and, as stated in the act of assembly, "prima facie evidence of the fact that such certificate was issued by an official speedometer testing station appointed by the secretary, and of the accuracy of the speedometer, . . ." To sustain the contention of defendant's counsel in this proceeding would be, in our opinion, placing such a tech-

nical interpretation upon the very broad act of assembly above quoted, that it would be almost impossible to sustain a conviction for speeding with the result that the evil to be remedied by the act of assembly and the real intent and purpose of the legislature in enacting the above-quoted statute, would be voided and of no effect. Such a result, in our opinion, would lead to an absurdity, and we do not think that the legislature in enacting the statute intended any absurd results.

The certificate in this case is the official certificate furnished to the testing station by the Secretary of Revenue, the blanks are all filled in and the same is signed by the person making the test, and we believe that the results of the test made, which are attached thereto, may be taken in conjunction with the certificate, and that the same speaks for itself, which is obvious, understandable and admissible.

In addition to the foregoing, we wish to note that counsel for defendant does not contend that defendant did not operate her motor vehicle upon this highway at a speed in excess of that allowed by The Vehicle Code, and defendant herself admitted under oath on the witness stand that she did exceed this speed limit, and, therefore, we do not see how the court has any discretion in the matter, irrespective of the admissibility or inadmissibility of the certificate here complained of, to conclude other than that defendant violated the section of The Vehicle Code charged in the information, and to this end we make the following

### Order

And now, to wit, March 6, 1951, the appeal of defendant is dismissed, and the judgment of the justice of the peace is affirmed, and the district attorney is directed to proceed to collect the fine of $10 and costs of prosecution from the bond heretofore filed, unless defendant shall pay the same within 10 days from the date hereof.